UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL RIVAS,<br><br>            Petitioner,<br><br>      v.<br><br>CRAIG KOENIG, Warden, Soledad State Prison,<br><br>            Respondent. | Case No.: 1:21-cv-00309-DAD-JLT (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT RESPONDENT'S MOTION TO DISMISS<br><br>(Doc. 11)<br><br>[THIRTY DAY OBJECTION DEADLINE] |

On March 2, 2021, Petitioner filed the instant federal petition for writ of habeas corpus. (Doc. 1.) The Respondent has moved the Court to dismiss the action as untimely and for failure to exhaust state remedies. (Doc. 11.) Petitioner filed an opposition on July 16, 2021. (Doc. 14.) On August 25, 2021, Respondent filed a reply. (Doc. 17.) For the following reasons, the Court recommends that the motion to dismiss be **GRANTED** and the petition be **DISMISSED**.

**DISCUSSION**

I.      Procedural Grounds for Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . ." Rule 4 of the Rules Governing Section 2254 Cases.  The Rules Governing Section 2254 Cases may be applied to petitions for writ of habeas corpus other than those brought under § 2254 at the Court's discretion. See Rule 1 of the Rules Governing Section 2254

1

Cases. Civil Rule 81(a)(4) provides that the rules are applicable "to proceedings for habeas corpus . . . to the extent that the practice in those proceedings is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases and has previously conformed to the practice in civil actions." Fed. R. Civ. P 81(a)(4).

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss after the Court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

Respondent's motion to dismiss asserts that the petition is untimely and fails to exhaust state administrative remedies. Accordingly, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

II.     Untimely

    A.     Limitation Period for Filing Petition for Writ of Habeas Corpus

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997). The instant petition was filed on March 2, 2021, and thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). In most cases, the limitation period begins running on the date that the petitioner's direct review became final. In this case, Petitioner did not appeal his August 10, 2016 resentencing judgment. (LD 12-5 – LD 12-7.)[1] Therefore, Petitioner's

---

[1] "LD" refers to the documents lodged by Respondent with the motion to dismiss.

2

conviction became final sixty days after he was resentenced when the time for filing a direct appeal expired, or October 9, 2016. (Id., citing Mendoza v. Carey, 449 F.3d 1065, 1067 (9th Cir. 2006).) The one-year statute of limitations commenced on the following day on October 10, 2016. Absent applicable tolling, the last day to file a federal habeas petition was on October 9, 2017.

Petitioner contends he is entitled to a later trigger date under 28 U.S.C. § 2244(d)(1)(D) until the time a lawyer could analyze his case for new claims. (Doc. 14 at 4-6.) Specifically, he argues that his indigent status and lack of legal knowledge made his claims undiscoverable until he retained counsel. (Id.)

However, as Respondent asserts, these claims are not based on newly discovered evidence. (Doc. 17 at 3.) Petitioner raises two grounds in his federal petition which he claims deserve a later trigger date. (Doc. 1.) He argues (1) his conviction was supported by unreliable evidence because (a) the cell phone expert never verified the cell phone number belonged to Petitioner and (b) the name and address the cell phone was registered to did not belong to Petitioner (ground one), and (2) he received ineffective assistance of trial counsel because counsel (a) failed to request a severance, (b) did not call expert witnesses, and (c) did not renew objections to the foundation and relevance of the prosecution's expert witness (ground two). (Doc. 1.) Respondent correctly asserts that the factual predicate of his claims were known to him at his trial in 2012. (Doc. 17 at 3.) Respondent points out that Petitioner would have known at the time of trial whether the cell phone expert verified that the cell phone number belonged to Petitioner and that counsel had not requested a severance, had not called expert witnesses, and did not renew objections to the foundation and relevance of the prosecution's expert witness, and he would have known even sooner that the name and address the cell phone was registered to did not belong to him. (Doc. 17 at 3.) Additionally, having sat through the trial, Petitioner was aware of counsel's failure to request a severance or renew certain objections and was aware that counsel did not call expert witnesses to testify.

Petitioner is not entitled to a later trigger date for predicate facts known to him at the time of his trial. As such, Petitioner fails to show that hiring a habeas attorney many years later was the soonest he could have discovered the factual predicate of his claims. See Evans v. Galaza, No. CV 98-8536-WDK (MLG), 2012 U.S. Dist. LEXIS 177048, at *24-25 (C.D. Cal. Oct. 2, 2012).

Petitioner's purported explanation for his failure to discover the factual predicate of his claims sooner is that he lacked the education and sophistication necessary to identify the legal claims in this petition and the money to hire an attorney. (Doc. 14 at 4-6.) Although he raised ineffective assistance of counsel, prosecutorial misconduct, and trial court error claims in his four pro se state habeas petitions, he claims that professional legal expertise was needed to identify the legal bases for the claims presented by counsel in both state habeas petitions five through ten and in his federal petition. (Id.) According to Petitioner, these facts both explain and justify his successive petitions. (Id.) However, as Respondent points out, Petitioner presents no authority for a later trigger date based on lack of legal sophistication or lack of funds to hire an attorney, and moreover, contrary authority exists. (Doc. 17 at 4.) A petitioner's pro se status or lack of legal assistance while preparing a petition does not justify a failure to timely file the petition because there is no legal right to counsel in collateral proceedings. (Doc. 17 at 4, citing Mays v. Madden, No. CV 18-10678 PSG (SS), 2019 WL 2424539, at *6 (C.D. Cal. May 16, 2019) (petitioner was not entitled to later trigger date under § 2254(d)(1)(D) because his "lack of legal sophistication does not explain his failure to recognize false evidence and seek a legal remedy until decades later"); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) (no right to counsel after direct appeal).) The Supreme Court has stated that "we have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness" Johnson v. United States, 544 U.S. 295, 311 (2005). Accordingly, Petitioner's untimely presentation of new claims developed by habeas counsel based on facts known to Petitioner at his trial do not entitle him to a later trigger date under § 2244(d)(1)(D).

  B. Statutory Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

Under the AEDPA, the statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2). A properly filed application is one that complies with the applicable laws and rules governing filings, including the form of the application and time limitations. Artuz v. Bennett, 531 U.S. 4, 8 (2000). An application is pending during the time that "a California petitioner completes a full round of [state] collateral review," so long as there is no unreasonable delay in the intervals

between a lower court decision and the filing of a petition in a higher court. Delhomme v. Ramirez, 340 F. 3d 817, 819 (9th Cir. 2003), *abrogated on other grounds as recognized by* Waldrip v. Hall, 548 F. 3d 729 (9th Cir. 2008) (*per curiam*); see Evans v. Chavis, 546 U.S. 189, 193-194 (2006); Carey v. Saffold, 536 U.S. 214, 220, 222-226 (2002); Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

Petitioner filed ten state post-conviction collateral actions as follows:

First Action:

December 13, 2016: Petition for writ of habeas corpus filed in the Fresno County Superior Court (LD 12-8).

February 10, 2017: Petition denied (LD 12-9).

Second Action:

April 4, 2017: Petition for writ of habeas corpus filed in the California Court of Appeal (LD 12-10).

August 24, 2017: Petition denied (LD 12-11).

Third Action:

November 15, 2017: Petition for writ of habeas corpus filed in the California Court of Appeal (LD 12-12).

December 28, 2017: Petition denied (LD 12-13).

Fourth Action:

January 28, 2018: Petition for writ of habeas corpus filed in the Fresno County Superior Court (LD 12-14).

March 20, 2018: Petition denied (LD 12-15).

Fifth Action:

March 13, 2019: Petition for writ of habeas corpus filed in the Fresno County Superior Court (LD 12-16).

April 24, 2019: Petition denied (LD 12-17).

Sixth Action:

June 24, 2019: Petition for writ of habeas corpus filed in the California Court of Appeal (LD 12-18).

July 5, 2019: Petition denied (LD 12-19).

Seventh Action:

October 11, 2019: Petition for writ of habeas corpus filed in the California Court of Appeal (LD 12-20).

October 17, 2019: Petition denied (LD 12-21).

Eighth Action:

February 19, 2020: Petition for writ of habeas corpus filed in the Fresno County Superior Court (LD 12-22).

June 2, 2020: Petition denied (LD 12-23).

Ninth Action:

July 24, 2020: Petition for writ of habeas corpus filed in the California Court of Appeal (LD 12-24).

December 17, 2020: Petition denied (LD 12-25).

Tenth Action:

December 30, 2020: Petition for review received and application for relief from default filed in the California Supreme Court (LD 12-26).

January 4, 2021: Application for relief from default denied (LD 12-27).

*1.    The limitation period that elapsed before the first state petition was filed*

Respondent alleges that tolling between finality of direct review on October 9, 2016, and the filing of the first state petition on December 13, 2016 (LD 12-8), is not appropriate. (Doc. 11 at 6.) Respondent contends that no state court application was "pending." (Doc. 11 at 6, citing 28 U.S.C. § 2244(d)(2).) The limitations period is not tolled for the period between finality and the filing of an application for post-conviction or other collateral review in state court since no state court application is "pending." See De Jesus v. Acevedo, 567 F.3d 941, 944 (7th Cir. 2009), cert. denied, 130 S. Ct. 758 (2009) (holding that a "state court's order denying a request for collateral review (whether on the merits or for any procedural reason) does not require the exclusion, under §2244(d)(2), of time that passed before the state collateral proceeding began," rejecting the petitioner's argument that Jimenez

v. Quarterman, 555 U.S. 113 (2009), dictated a different result). Accordingly, 64 days of the limitation period expired before Petitioner filed his first state petition.

### 2. *Tolling for the pendency of the first through second state petitions*

Respondent next claims that Petitioner is entitled to tolling for the pendency of his first and second state petitions. (Doc. 11 at 6-7, citing Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) (state habeas petitions meeting state's filing requirements are properly filed within the meaning of 28 U.S.C. § 2244(d)(2)).) Petitioner filed his first state petition in the state superior court on December 13, 2016 (LD 12-8), and the petition was denied on February 10, 2017 (LD 12-9). Less than two months later, he filed his second state petition in the state appellate court on April 4, 2017 (LD 12-10), which was denied on August 24, 2017 (LD 12-11). Respondent alleges that because Petitioner was proceeding with his second state petition in both an orderly and diligent manner, he was continuing to seek basic appellate review of the first state petition, and he is entitled to interval tolling. (Doc. 11 at 6.) The Court agrees, therefore, the limitation clock stopped for a total of 255 days, the period from December 13, 2016, the date the first state petition was filed, to August 24, 2017, the date that the second state petition was denied. (Doc. 11 at 6-7.)

### 3. *The limitation period that elapsed between the denial of the second state petition and the filing of the third state petition*

After the August 24, 2017 denial of the second state petition by the state appellate court (LD 12-11), Petitioner waited 82 days before filing his third state petition, also filed in the state appellate court, on November 15, 2017 (LD 12-12). Petitioner was no longer seeking basic appellate review of his second state petition because he did not progress to the next level of the state courts, but again filed in the state appellate court. Respondent cites to Carey, 536 U.S. at 222-23, which found that the statute of limitations is only tolled for exhaustion of state remedies during intervals between dispositions of state collateral actions and the filing of a subsequent collateral action at the next state appellate level. (Doc. 11 at 7.) In other words, statutory tolling is available for periods between state habeas petitions when the petitions comprise "one complete round of the State's established appellate review process." Nino v. Galaza, 183 F.3d 1003 (9th Cir. 1999); see also Delhomme v. Ramirez, 340 F.3d 817, 821 (9th Cir. 2003) ("the crucial issue for tolling purposes is whether the petitioner has timely proceeded *to the*

7

*next appellate level*, since the one-year filing period is tolled to allow the opportunity to complete one full round of review" (quotation marks omitted; emphasis added)). Accordingly, in addition to the 64 days that had already expired, another 82 days elapsed between the denial of the second state petition and the filing of the third state petition, for a total of 146 untolled days.

### *4.     Tolling for the pendency of the third state petition*

Respondent correctly alleges that Petitioner is entitled to tolling for the pendency of his third state petition. (Doc. 11 at 7.) Thus, the limitation clock stopped for the period from November 15, 2017 (LD 12-12), the date the third state petition was filed, to December 28, 2017 (LD 12-13), the date that the third state petition was denied, a total of 44 days.

### *5.     The limitation period that elapsed between the denial of the third state petition and the filing of the fourth state petition*

The state superior court denied the fourth petition for being successive, citing to In re Clark, 5 Cal.4th 750 (1993) (LD 12-15), accordingly, Respondent contends that the fourth state petition was improperly filed and did not toll the limitation period (Doc. 11 at 7-8). Successive petitions do not toll 28 U.S.C. § 2244(d)(2)'s one-year limitation period if the state application is not properly filed. See Pace v. DiGuglielmo, 544 U.S. 408 (2005). Respondent alleges that the limitation period continued to run both (1) on the days before the untimely-under-state-law filing, (2) on the days that the untimely-under-state-law petition was on file, and (3) on the days after the untimely-under-state-law filing was denied until the next state petition was filed (the fifth petition), a period of 439 days. (Doc. 11 at 8.) Therefore, in addition to the 146 days that had already expired, the limitation clock continued to run during the 439-day interval until it expired 219 days later, on August 4, 2018.

Petitioner's subsequent petitions could not extend the limitation period as they were filed after the expiration of the limitation period. As Respondent asserts, Petitioner's fifth through tenth state petitions did not extend the limitation period (Doc. 11 at 8, n. 5) because the earliest of these petitions was not filed until March 13, 2019 (LD 12-16), over seven months after the August 4, 2018 expiration of the limitation period. Because Petitioner did not file his federal petition until March 2, 2021, he exceeded the one-year limitation period under 28 U.S.C. § 2244(d), by over thirty months. (Doc. 11 at 8.)

C.     Equitable Tolling

The running of the one-year limitation period under 28 U.S.C. § 2244(d) is subject to equitable tolling in appropriate cases. See Holland v. Florida, 560 U.S. 631, 651-652 (2010); Calderon v. United States Dist. Ct., 128 F.3d 1283, 1289 (9th Cir. 1997). Equitable tolling may be granted when "extraordinary circumstances beyond a prisoner's control make it impossible to file the petition on time." Shannon v. Newland, 410 F. 3d 1083, 1089-1090 (9th Cir. 2005) (internal quotation marks and citations omitted). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Holland, 560 U.S. at 655; Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F. 3d 1062, 1066 (9th Cir. 2002) (citation omitted). As a consequence, "equitable tolling is unavailable in most cases." Miles, 187 F. 3d at 1107.

Petitioner makes no claim to entitlement of equitable tolling. Petitioner must demonstrate diligence throughout the limitations period. Lacava v. Kyler, 398 F.3d 271, 277 (3rd Cir. 2005). He fails to do so. He fails to demonstrate any extraordinary circumstance stood in his way of timely filing his federal petition, and he fails to show that he acted diligently. He should not be granted equitable tolling.

II.     Exhaustion

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Duncan v.

Henry, 513 U.S. 364, 365 (1995). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66. In Duncan, the United States Supreme Court reiterated the rule as follows:

> In Picard v. Connor, 404 U.S. 270, 275 . . . (1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "opportunity to pass upon and correct alleged violations of the prisoners' federal rights" (some internal quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan, 513 U.S. at 365-366. The Ninth Circuit examined the rule further, stating:

> Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal claims in state court *unless he specifically indicated to that court that those claims were based on federal law*. See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in Duncan, this court has held that the *petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident,"* Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7 . . . (1982)), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds. Hiivala v. Wood, 195 F3d 1098, 1106-07 (9th Cir. 1999); Johnson v. Zenon, 88 F.3d 828, 830-31 (9th Cir. 1996); . . . .
>
> In Johnson, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

Lyons v. Crawford, 232 F.3d 666, 668-669 (9th Cir. 2000) (italics added), *as amended by* Lyons v. Crawford, 247 F.3d 904, 904-5 (9th Cir. 2001).

Petitioner raises two grounds in his federal petition, that (1) his conviction was supported by unreliable evidence because (a) the cell phone expert never verified the cell phone number belonged to Petitioner and (b) the name and address the cell phone was registered to did not belong to Petitioner (ground one), and (2) he received ineffective assistance of trial counsel because counsel (a) failed to request a severance, (b) did not call expert witnesses, and (c) did not renew objections to the

foundation and relevance of the prosecution's expert witness (ground two). (Doc. 1.)

Respondent alleges that Petitioner had one proper filing in the state supreme court, a petition for review of his state appellate court direct review proceedings, however, the petition did not raise grounds one or two of the federal petition. (LD 12-3.) According to Respondent, though Petitioner raised a sufficiency of the evidence claim, it did not raise the claim presented here. (Doc. 11 at 9.) In the claim in the state petition: "Appellants challenge the sufficiency of the evidence underlying their convictions for assault with a semiautomatic firearm as alleged in Count 13 of the indictment. They argue the prosecution failed to establish the semiautomatic characteristics of the weapon(s) used in the offense. Rivas additionally argues that his conviction under Count 4 for attempting to dissuade a witness within the meaning of section 136.1, subdivision (c)(1) lacks evidentiary support." (Doc. 11 at 9, n.6; LD 12-2.) Exhaustion is not achieved unless the claim raised in the state's highest court was based on the same legal theory and basis as the claim in the federal court. (Doc. 11 at 9, citing Castillo v. McFadden, 399 F.3d 993, 999 (9th Cir. 2005).)

On December 30, 2020, Petitioner attempted to file a petition for review from the lower court's December 17, 2020 denial of relief, but that attempted filing was three days late. (Doc. 11 at 10, citing Cal. Rule of Ct. 8.500(e)(1); Robinson v. Lewis, 9 Cal. 5th 883, 896 (2020).) Consequently, it was only stamped "received" by the state supreme court, rather than filed. (Doc. 11 at 9; LD 12-26; LD 12-27.) Though that petition contained the federal claims raised here, the supreme court denied Petitioner's request for relief from default and did not consider the merits of the petition. (Doc. 11 at 9-10; LD 12-27.) Importantly, Petitioner concedes that he did not properly present the claims in his federal petition to the state supreme court. (Doc. 14 at 6.)

Petitioner argues that his claims are "technically exhausted" because he procedurally defaulted the claims in state court, and that this Court should excuse the procedural default to reach the merits on federal habeas because a simple miscalculation of dates resulted in the requisite cause and prejudice. (Doc. 14 at 6-12.) A claim that was not "properly exhausted," may nonetheless be "technically exhausted" if the claim is procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 732 (1991) (A petitioner who has "defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."); see

also Smith v. Baldwin, 510 F.3d 1127, 1138 (9th Cir. 2007). "If the petitioner fails to present his federal claims to the state's highest court, and if he is procedurally barred from presenting those claims to the appropriate state court at the time of filing his federal habeas petition, the petitioner's claims are considered procedurally defaulted for purposes of federal habeas review." Smith, 510 F.3d at 1138 (citing O'Sullivan, 526 U.S. at 848).

The technical exhaustion doctrine usually provides little relief. While a petitioner need not prove the claims were exhausted, they are considered procedurally defaulted and "federal review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. Clearly, the vast majority of such claims are barred from federal review due to procedural default.

Petitioner claims that the cause for the delay in filing the petition in the California Supreme Court was error in calculating the deadline. (Doc. 14 at 9-10.) Petitioner asserts that he is prejudiced because he is no longer able to present this petition to the California Supreme Court and did not have his matter heard on the merits. (Doc. 14 at 10.) Respondent argues that if Petitioner is correct that he can no longer properly present his claim in state court because the claims would be barred under state rules, he has proved the claims should be barred here also as procedurally defaulted. (Doc. 17 at 7.) First, Respondent asserts that Petitioner must allege ineffective assistance of counsel as cause but does not and instead takes the blame for all calculation errors. (Doc. 14 at 9-10; Doc. 17 at 7.) Respondent correctly alleges that "cause" for a default must be an "external" factor that cannot fairly be attributed to the petitioner, and Petitioner's concession that cause was his own miscalculation concedes that nothing external to himself was the impediment to timely filing the second state petition for review. (Doc. 17 at 7, citing Coleman, 501 U.S. at 753.) Relatedly, Respondent contends that Petitioner could not show the miscalculation was external to him even were he to blame state habeas counsel for the miscalculation. (Doc. 17 at 7-8.) Third, Respondent argues that ineffective counsel is "cause" only if "exhausted" in state court as an "independent" claim for relief. (Doc. 17 at 8.)

The Supreme Court in Murray v. Carrier, 477 U.S. 478 (1986), considered the circumstances under which attorney error constitutes cause. Carrier argued that his attorney's inadvertence in failing

to raise certain claims in his state appeal constituted cause for the default sufficient to allow federal habeas review, and the Court rejected this claim. Id. at 487-88. Similarly, assuming it was the attorney's[2] miscalculation of the filing deadline that was the cause for the delay in filing the second state petition for review. in Murray, the Court held, "We think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Id. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). The miscalculation of the filing deadline in this case is not such an external and objective factor that impeded counsel's efforts to comply with the procedural deadlines.

Petitioner also appears to claim that it would be futile to return to state court to assert the unexhausted claims because the state would reject the claims as untimely. (Doc. 14 at 10-11.) However, as Respondent argues, the Supreme Court and the Ninth Circuit have expressly rejected the futility doctrine. (Doc. 17 at 5, citing Engle v. Isaac, 456 U.S. 107, 130 (1982); Roberts v. Arave, 847 F.2d 528, 530 (9th Cir. 1988) ("[T]he apparent futility of presenting claims to state courts does not constitute cause for procedural default.").) As Respondent contends, Petitioner's attempt to argue futility, without attempting proper exhaustion through California's original writ procedure does not prove technical exhaustion. (Doc. 17 at 6.) Accordingly, there is insufficient cause to overcome Petitioner's procedural default.

Petitioner also contends that failure to consider the petition will result in a fundamental miscarriage of justice. (Doc. 14 at 12-14.) Petitioner alleges that this case presents exceptional circumstances of peculiar urgency that warrant dispensing with the exhaustion requirement and proceeding to the merits of the claims. (Doc. 14 at 11-12.) However, as Respondent alleges, Petitioner's case does not qualify as exceptional. Petitioner cites Hendricks v. Zenon, 993 F.2d 664, 672 (9th Cir. 1992), and Simmons v. Blodgett, 910 F. Supp. 1519, 1524 (W.D. Wash. 1996), as examples of federal courts dispensing with the exhaustion requirement, which Respondent adequately distinguishes. In Hendricks, which the court described as "a rare case of peculiar urgency," the court

---

[2] The petition speaks only to "Petitioner's" failure to file the petition in a timely fashion; it does not claim that counsel played a role in the act.

found the petitioner failed to exhaust, in part, because the state failed to afford counsel to the petitioner and prevented him from receiving a constitutionally adequate direct appeal. Id. at 669-72. The petitioner's only recourse to challenge the deprivation of the appeal was federal court. Because the state's error on appeal caused petitioner's unusual procedural posture in federal court, the federal court found "exceptional circumstances" allowed it to address issues that were technically not exhausted. Id. at 672. In contrast to Hendricks, Petitioner here was not deprived of a constitutional right which also prevented him from exhausting a claim of that deprivation, and Petitioner has not sufficiently alleged exceptional circumstances to warrant addressing issues that are not technically exhausted.

Similarly, in Simmons v. Blodgett, 910 F. Supp. 1519, 1524 (W.D. Wash. 1996), the court found "exceptional circumstances" because no adequate state remedy existed. The exhaustion determination in that death penalty case hinged on the eleven-year post-trial delay coupled with the need to examine a witness who was elderly, marginally competent, and in poor health. Id. at 1521, 1524. Despite diligent litigation, petitioner's ability to prove his claim continued to diminish rapidly with the passage of time with the risk of being lost forever, and the court found the conviction was subject to "serious challenge." Id. at 1524. However, in this case, Petitioner's claims do not rest on evidence that is at risk of being lost, and any delay is attributable to Petitioner. (Doc. 17 at 6.)

Because Petitioner has not properly presented his claims for federal relief in the state courts, the Court will recommend dismissal of the petition for failure to exhaust state remedies. Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006); Jiminez v. Rice, 276 F.3d 478, 481 (9th Cir. 2001).

III.     Factual Innocence

Petitioner further argues that he is factually innocent of the offenses for which he was convicted as further support for his claim that exhaustion should not be an impediment to a decision on the merits. (Doc. 14 at 13.) Toward this end, Petitioner maintains that his convictions were based on unreliable and unfounded evidence, a nonobjective and biased prosecution expert, and federal constitutional violations. (Doc. 14 at 13.) As noted above, the Court does not agree that exhaustion should be excused, likewise, it disagrees that the petition adequately alleges actual innocence.

A gateway claim of actual innocence would allow a federal habeas petitioner to overcome a procedural bar to consideration of his claims on the merits. McQuiggin v. Perkins, 569 U.S. 383, 386

(2013). But these claims are rare. Id. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" McQuiggin, 569 U.S. at 401 (citing Schlup, 513 U.S. at 316). This standard is an "extremely high hurdle." Stewart v. Cate, 757 F.3d 929, 938 (9th Cir. 2014). A gateway innocence claim is foreclosed if the petitioner fails to produce any new evidence. See, e.g., Pratt v. Filson, 705 F. App'x 523, 525 (9th Cir. Aug. 4, 2017); Chestang v. Sisto, 522 F. App'x 389, 390-91 (9th Cir. June 11, 2013).

Petitioner is attempting to assert actual innocence, as demonstrated by the fact that he has "diligently maintained his innocence" and that because he proceeded *in pro per*, he did not receive a fair opportunity to prove his innocence. (See Doc. 14 at 13.) However, Petitioner does not present evidence to support his claim of actual innocence, nor does he make any arguments to undermine the state's case against him. This is inadequate to meet the exacting standard for a gateway actual innocence claim. See, e.g., Larsen v. Soto, 742 F.3d 1083, 1096 (9th Cir. 2013). Instead, he alleges only that some of the evidence was insufficient to support his convictions (Doc. 1 at 6) without showing insufficiency of the evidence as a whole. Jackson v. Virginia, 443 U.S. 307, 319 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.").

Moreover, Respondent points to the evidence in the record, which supports the conviction. For example, one of the victims of the Atwater robbery on Clear Creek Court, Fernando Guzman, identified Petitioner as being involved in that robbery. (LD 28 at 2280, 2297-99, 2307-08, 2771-76.) Mr. Guzman had seen Petitioner on two occasions before the robbery and observed Petitioner sitting in a car parked near where the robbery occurred. Id. Also, Respondent notes that though Petitioner retracted his admission, he admitted to law enforcement that he was involved in a robbery that he

15

"think[s] was in Clovis." (LD 29 at 500-01.) He admitted that another robbery in Selma occurred in a "blue house," and described the "red Suburban" in which he rode with the other robbers to burglarize another house. (LD 29 at 505, 508-09.) Petitioner also admitted going to Kerman to help the others burglarize a home there, but he insisted that he did not even look at the house on Kearney Boulevard and remained parked at a nearby corner. (LD 29 at 508-09.)

Petitioner acknowledged that when the other robbers "go inside the houses, I know they take a lot of stuff" including gold, and he initially claimed that he had only once taken "a little bit" of the loot and finally admitted that he "started to make a little money" as a percentage of what the others stole in exchange for showing them places to rob. (LD 29 at 505-06, 509-10.)

The cell phone records, in fact, implicated Petitioner in the robberies. First, though the number assigned to the phone changed twice after it was purchased[3], the "walkie-talkie" function had the same, unique number the entire time of the ownership of the phone. (LD 28 at 3106, 3301, 3303-04.) Second, Respondent cites to evidence from the state record that about a week before his arrest, while Petitioner was under surveillance one of the officers dialed 559-647-1927[4], and Petitioner pulled out a cell phone from his pocket and answered the call. (LD 28 at 3018-19, 3021-24, 3027-28, 3038-40.) Third, Respondent notes that phone records revealed that Petitioner's cell phone was present near the robbery on Jordan Avenue in Clovis, during which time it communicated as a walkie-talkie with a cell phone registered to Marco Ramirez, a cell phone associated with Zazueta and a cell phone associated with Landeros. (Lod. Doc. 28 at 3107-15, 3140, 3258.)

Just before the robbery in Atwater on Buhach Road in Atwater, the cell phone was used five times to contact Marco Ramirez, whose phone was near the scene of the robbery at the time of the robbery. (Lod. Doc. 28 3142-48, 3200-14, 3221-28.) Around the time of the robbery on Kearney Boulevard in Kerman, Petitioner's cell phone was in the proximity of the robbery and was used to contact Marco Ramirez and Zazueta using the walkie-talkie function. (Lod. Doc. 28 at 3118-21, 3149-50.) The phone was also at the location and time of the robbery around the time of the robbery on

---

[3] The record indicates that the phone was a Boost phone, which is a prepaid arm of Sprint Nextel. (LD 28 at 3177.) The two "replacement" numbers are those that Petitioner alleges were not authenticated as his telephone numbers. (Doc. 1-1 at 3.)

[4] This is one of the numbers that Petitioner complains was not authenticated as his by the expert.

16

1  Clear Creek Court in Atwater (LD 28 at 3121-24, 3128-29, 3151) and at the location and time of the
2  robbery on McCall Avenue in Selma. (LD 28 at 3133-36, 3152-53.) For both of these robberies, the
3  phone records indicate calls between Petitioner's phone and Marco Ramirez. (LD 28 at 3128-29,
4  3133-36.)

5  Respondent alleges that the cell phone expert was not the only individual who identified
6  Petitioner as possessing the cell phone. (Doc. 17 at 12.) Respondent asserts that the evidence showed
7  that Petitioner was observed by law enforcement to possess the cell phone, and Petitioner admitted to
8  being present at several robberies where the cell phone was present and being used as set out above,
9  thus corroborating the cell phone was his. When confronted with his cell phone records placing him at
10 the scene of the home invasion robberies, Petitioner did not deny the phone was his. (LD 28 at 3676-
11 77.) Additionally, witness Rosa Monson's cell phone had a listing for Petitioner, which identified both
12 of the cell phone numbers Petitioner now disputes were his. (LD 28 at 3700-01, 3752-53.)

13 Petitioner proffers no new evidence in support of his implied claim of actual innocence.
14 Further, Petitioner does not allege that Petitioner is actually innocent. Petitioner alleges only that his
15 convictions were based on unreliable and unfounded evidence, a nonobjective and biased prosecution
16 expert, and federal constitutional violations. (Doc. 14 at 13.) Factual innocence is more than an
17 incremental, increased set of doubts. The federal court "can only justify interference with the jury's
18 verdict where the factual showing of innocence claim is directly related to the constitutional violation
19 and is so strong that, had the excluded probative evidence been before it, the jury probably would have
20 concluded that the defendant was innocent." Parks v. Reynolds, 958 F.2d 989, 996 (10th Cir. 1992).
21 Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that,
22 in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a
23 reasonable doubt. "To be credible, [a claim of actual innocence] requires petitioner to support his
24 allegations of constitutional error with new reliable evidence . . . that was not presented at trial."
25 Schlup, 513 U.S. at 324. However, Petitioner here does not provide any newly presented evidence to
26 support his innocence claim. Moreover, as described above, the evidence in the record supports the
27 conviction, including Petitioner's own acknowledgement of making money from the robberies, that a
28 victim identified Petitioner as being involved in one of the robberies, and the cell phone records

implicating Petitioner in the robberies.

To the extent Petitioner is attempting to argue a freestanding actual innocence claim, that argument also fails. The Supreme Court has not yet resolved whether a prisoner is entitled to habeas relief for a freestanding actual innocence claim. McQuiggin, 569 U.S. at 392; Herrera v. Collins, 506 U.S. 390, 404 (1993) (stating that "habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."); Gimenez v. Ochoa, 821 F.3d 1136, 1143-45 (9th Cir. 2016) ("The Supreme Court has never recognized 'actual innocence' as a constitutional error that would provide grounds for relief without an independent constitutional violation."). Even if a freestanding actual innocence claim does exist, petitioner has not adequately stated such a claim. He has not presented any evidence of his innocence which would undermine the court's confidence of his conviction. At most he argues that the jury could have and should have found him not guilty of the offenses. This is not the same as being actually innocent of the acts.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the motion to dismiss be GRANTED and the habeas corpus petition be DISMISSED.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten court days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

///

///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __**September 17, 2021**__     _____ /s/ Jennifer L. Thurston
                                      CHIEF UNITED STATES MAGISTRATE JUDGE